IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY FISHER GUNTER,           )
                              )
            Plaintiff,        )
                              )
      v.                      )      Civil Case No.: 1:16-cv-257-WKW-WC
                              )
PUBLIX SUPER MARKETS, INC.,   )
                              )
            Defendant.        )

# ORDER AND
# RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is before the court on Plaintiff's complaint (Doc. 1), which asserts

claims against Defendant stemming from Plaintiff's fall in a restroom stall in Defendant's

Dothan, Alabama, store. Defendant filed a Motion for Summary Judgment (Doc. 34)

and memorandum in support thereof (Doc. 35), to which Plaintiff responded in

opposition (Doc. 40), and Defendant replied (Doc. 43). As that matter is now fully

briefed, it is ripe for recommendation.[1]

Also pending before the court is Defendant's Motion to Strike (Doc. 42) portions

of the testimony of Amanda Wright, a witness whose testimony Plaintiff relies upon in

her Response (Doc. 40) in Opposition to Defendant's Motion for Summary Judgment

(Doc. 34). Plaintiff has also filed a Motion to Strike (Doc. 46) the affidavit of Jeremy

Vinson, a licensed and certified Master Plumber, whose testimony Defendant relied upon

---

[1] On June 29, 2016, the United States District Judge assigned to this case referred the matter to the
undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial
matters as may be appropriate." Doc. 10.

in its Reply (Doc. 43) to Plaintiff's Opposition (Doc. 40) to Defendant's Motion for Summary Judgment (Doc. 34) to rebut the testimony of Wright. The undersigned entered Orders (Docs. 45, 47) for the opposing parties to show cause, if any there be, why the motions should not be granted. Both opposing parties responded within the time frame set forth by the undersigned. As those matters are now fully briefed, they are ripe for determination by the undersigned.

The undersigned turns first to determine the pending motions to strike, as such a determination may be pertinent to the undersigned's recommendation on Defendant's motion for summary judgment.

## I.    Defendant's Motion to Strike

Defendant moves the court to strike portions of the testimony of Amanda Wright, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Doc. 42 at 1. Wright, who is a legal assistant to Plaintiff, provided testimony relied upon by Plaintiff in her response to Defendant's motion for summary judgment. Defendant moves to strike portions of Wright's testimony concerning her opinion that the "standing water" surrounding Defendant's toilet, presumably which led to Plaintiff's fall, was caused by a broken seal at the toilet's base. *Id.* at 2. During her deposition, Wright examined several photographs of the restroom scene and testified that the "seal" to the toilet was broken. Doc. 41-2 at 88:1-21. She further relayed her opinion, based upon personal experience with her home toilet, that "[w]hen a seal is broken around the bottom [of a

toilet,] it's going to leak." *Id*. at 88:14-21.

Defendant argues that Wright's credentials in the area of "toilet operation" are non-existent, and therefore, her ability to "offer expert plumbing testimony is misplaced, and, unsurprisingly, . . . totally unreliable[.]" Doc. 42 at 2. Defendant points to Federal Rules of Evidence 701 and 702 as grounds to strike Wright's testimony, alleging that such testimony forms an opinion "based on scientific, technical, or other specialized knowledge" to which Wright is not qualified to offer an opinion. *Id*. at 3. Further, Defendant asserts that Wright's testimony is demonstratively incorrect because Wright has confused the caulking around the outside base of the toilet with the toilet's wax seal, located on the underside of the toilet, which contains the water and/or sewage matter. *Id*. at 6. Thus, Defendant argues that Wright's "(un)expert" opinion is due to be stricken. *Id*.

Plaintiff responds that Wright is not offered as an expert witness but as "a fact witness offering her lay opinion as to what she observed" in Defendant's restroom. Doc. 48 at 2. Plaintiff argues that Wright's testimony is within the purview of Federal Rule of Evidence 701, which allows a non-expert witness to testify as to her opinion so long as it is rationally based on the witness's perception, helpful to determine a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *Id*. Thus, Plaintiff asserts that Defendant's objection to Wright's testimony goes to the weight of her testimony, not its admissibility. *Id*. at 7.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . ." Fed. R. Civ. P. 12(f). Rule 12(f) is limited by the phrase: "from a pleading." Rule 7(a) lists the pleadings allowed in federal court. Fed. R. Civ. P. 7(a). This list does not include a party's brief in opposition of a motion, nor does it include a deposition. Therefore, Rule 12(f), by its terms, does not allow the court to "strike" portions of Wright's deposition.

Nonetheless, federal courts often consider a motion to strike evidence as an objection to that evidence's admissibility. *See, e.g., Ross v. Corp. of Mercer Univ.,* 506 F. Supp. 2d 1325, 1333–34 (M.D. Ga. 2007). Such objections are sometimes significant in resolving summary judgment because the court may not consider evidence, at that juncture, which could not be reduced to an admissible form at trial. *See Macuba v. Deboer,* 193 F.3d 1316, 1323 (11th Cir. 1999).

Until 2010, Rule 56 lacked a formal procedure to challenge such inadmissible evidence. *Harris v. CVS Caremark, Corp*., Case No.: 1:11-CV-732-VEH, 2013 WL 12133901, at * 1 (N.D. Ala. Jan. 29, 2013). Then, the advisory committee added Rule 56(c)(2), which provides: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Although Defendant has filed a Motion to Strike, the motion

challenges the admissibility of portions of a deposition. Therefore, the court will treat Defendant's Motion to Strike as an objection under Rule 56(c)(2).

The advisory committee's note to Rule 56(c)(2) provides that:

[An] objection [under Rule 56(c)(2)] functions much as an objection at trial. . . . *The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.*

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments (emphasis added).

Under the Federal Rules of Evidence, a witness can testify in the form of an opinion if the witness is properly qualified as an expert and certain other requirements are met. *See* Fed. R. Evid. 702. In this case, Wright is not identified as, nor has she been qualified as, an expert. If a witness is not qualified as an expert, she can only testify in the form of an opinion if the opinion "is limited to one that is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Fed. R. Evid. 701.

The undersigned does not conclude that Wright's testimony concerning her belief about why the toilet was leaking (if it was indeed leaking) is within such scientific, technical, or other "specialized knowledge" requiring Wright to be an expert before rendering her opinion. Indeed, Wright testifies that she saw what appeared to be a crack in the "seal" of the toilet, and that due to her personal experience of a similar situation

with her toilet at home, she concludes that Defendant's toilet suffers from the same condition as her own. Undoubtedly, Wright's testimony, if it were offered at trial, could be rebutted, as Defendant has done here, to expose the leaks (pun intended) in Wright's testimony. However, regardless of whether her conclusion is factually accurate, her testimony is rationally based upon her perception that the "seal" around the toilet's base was broken, causing her to believe that the toilet was leaking. Further, Defendants have pointed to no case, and the undersigned has not found one, that indicates that plumbing, specifically, requires such technical or specialized knowledge to fall within the purview of Rule 702. Therefore, the undersigned concludes that Wright's opinion that Defendant's toilet was leaking and why she believed that to be so is not the kind of opinion that should be confined to experts only. Accordingly, Defendant's Motion to Strike (Doc. 42) portions of Wright's testimony is due to be denied.

## II.    Plaintiff's Motion to Strike[2]

Plaintiff moves the court to strike the affidavit of Jeremy Vinson, a licensed and certified plumber in the State of Alabama, that is attached to Defendant's reply to Plaintiff's opposition to Defendant's motion for summary judgment. *See generally* Doc. 46. In the motion, Plaintiff asks that the testimony of Vinson be stricken from the record as it presents "expert opinions as to the operation, maintenance and installation of toilets in general and in regards to the toilet involved in the subject incident." *Id*. at 2, ¶ 3. Plaintiff argues that Vinson's opinion has been offered outside the deadline set forth by

---

[2] The undersigned will apply the same procedure set forth in Federal Rule of Civil Procedure 56(c)(2),

the court's Uniform Scheduling Order (Doc. 11) for expert witness disclosures.   *Id*. at 2,

¶¶ 6-7.   Therefore, Plaintiff requests that the court enter an order striking Vinson's

affidavit.   *Id*. at 2-3.

Defendant replies that "[b]ecause Jeremy Vinson was properly disclosed as a

rebuttal expert on the very same subject for which . . . Wright was offered and because [ ]

Vinson was disclosed within thirty-days of Plaintiff's 'disclosure' of [ ] Wright,

Plaintiff's motion is due to be denied."   Doc. 49 at 2.   For support, Defendant points the

court to Federal Rule of Civil Procedure 26, which states:

> A party must make [expert] disclosures at the times and in the sequence that
> the court orders.   Absent a stipulation or a court order, the disclosures must
> be made:

(i)      At least 90 days before the date set for trial or for the case to be ready for
         trial; or

(ii)     If the evidence is intended solely to contradict or rebut evidence on the
         same subject matter identified by another party under Rule 26(a)(2)(B) or
         (C), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D).   Importantly, part (ii) contemplates the rebuttal of an *expert*

*opinion*, and excuses an untimely submission of an expert's report based upon the need to

rebut expert testimony from the opposing side.   *Teledyne Instruments, Inc. v. Cairns*,

No. 6:12-cv-854-Orl-28TBS, 2013 WL 578124, at *17 (M.D. Fla. Oct. 25, 2013) ("The

test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information,

but whether it is 'intended solely to contradict or rebut evidence on the same subject

matter' of an opponent's *expert* report.") (emphasis added).   Here, Defendant is offering

discussed in detail above, to address Plaintiff's motion to strike.

expert testimony to rebut the testimony of a layperson.  Rule 26 does not provide for such an exception to the disclosure of expert opinions, and Defendant has not provided the court with any case indicating that such an extension should be applied.

However, untimely expert reports may still be allowed if the failure to timely serve them was "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1).  The determination of whether a party's failure is substantially justified or harmless lies within the "broad discretion" of the court.  *Abdulla v. Klosinski,* 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012).  In determining whether to allow an untimely expert report under Rule 37(c)(1), the Court considers: (1) the unfair prejudice or surprise of the opposing party; (2) that party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; (4) the importance of the evidence; and (5) the offering party's explanation for its failure to timely disclose the evidence.  *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC,* 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012); *accord S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592, 597 (4th Cir. 2003); *Abdulla,* 898 F. Supp. 2d at 1359.

Here, Defendant argues, and the undersigned agrees, that Defendant's untimely disclosure of its expert was substantially justified.  The court's Uniform Scheduling Order required expert witness disclosures from Plaintiff on or before September 20, 2016, and from Defendant on or before October 21, 2016.[3]  Doc. 11 at 2.  The Order also required discovery to be completed on or before December 21, 2016, and set the

_____

[3] Plaintiff submitted no expert disclosures, nor did Defendant.

8

dispositive motions deadline on or before January 20, 2017. *Id*. at 1, 2. On December 19, 2016, the parties filed a joint motion (Doc. 25) to extend discovery until April 1, 2017. In that motion, the parties stated that they did not seek an extension of the dispositive motions deadline, Doc. 25 at 2, ¶ 5, but that they needed additional time to secure the deposition of Plaintiff and Wright, *id*. at 2-3, ¶ 6. The undersigned granted the motion. Doc. 26 at 2.

Defendant states that the deposition of Wright was taken on January 5, 2017, which is clearly after Defendant's expert disclosure deadline of October 21, 2016. Doc. 49 at 4-5, n. 6. Until that time, Defendant was unaware that Wright believed the toilet leaked due to a broken seal, and that she would testify to such. Although this case is a premises liability action stemming from Plaintiff's fall in Defendant's restroom, the need for Defendant's expert regarding the condition of the toilet's wax seal was not apparent until after the deadline for disclosing such an expert passed. Indeed, it is hard to conceive that Defendant could anticipate that Wright—an assistant for Plaintiff with presumably no professional toiletry skills—would testify that she believed the toilet was leaking because of a broken seal around the toilet's base, or that she would proffer such a theory based upon her personal experience with her own toilet malfunction at home. Further, since it is hard to conceive that Defendant should have anticipated such testimony from Wright, it is even more unlikely that Defendant would have anticipated Plaintiff's reliance upon such testimony to oppose Defendant's motion for summary

judgment.  Accordingly, Defendant's failure to disclose Vinson as an expert in this case was substantially justified.  Therefore, Plaintiff's Motion to Strike (Doc. 46) Vinson's affidavit is due to be denied.

Alternatively, because the undersigned has concluded that Wright's opinion regarding the functionality of Defendant's toilet is not limited to that of an expert and is admissible, Vinson can similarly testify on the subject without being qualified as an expert.  Vinson's affidavit, while containing paragraphs that obviously demonstrate his significant knowledge and understanding of toiletry, is not outside the realm of understanding of an ordinary layperson.  Further, in many ways, Vinson is a fact witness.  His affidavit states that he has an exclusive contract with Defendant's store to provide plumbing services and that at no time before Plaintiff's fall was he notified that he needed to fix a leaky toilet.  Doc. 44-1 at 2-3, ¶¶ 3-6.  Vinson also states that he has not repaired any leaky toilets after Plaintiff's fall.  *Id*. at 3, ¶ 7.  Vinson states that he reviewed the photograph of Defendant's toilet that Wright used to form her opinion that it was leaking, and stated that Wright's reference to the "seal" is not the toilet's actual "seal"; rather, it is caulking placed around the base of the toilet for varying reasons that have nothing to do with the toilet's function itself."  Doc. 44-1 at 5, ¶¶ 16, 17.  Thus, it is clear that if Plaintiff argues Wright's testimony is admissible on this issue because it is not within the confines of expert opinion, Vinson's testimony should also be allowed, if for no other reason, as a fact witness who offers an opinion as to the same issue

addressed by Wright.

## III. Defendant's Motion for Summary Judgment

Having sorted through the parties' motions to strike, the undersigned now turns to address Defendant's Motion for Summary Judgment (Doc. 34).

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[t]he mere existence of a 'scintilla' of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In other words, "the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). In this context, "substantial evidence" means evidence of such a weight and quality that "'reasonable people, in the exercise of impartial judgment, might reach differing conclusions[.]'" *Danow v. Borack*, 346 F. App'x 409, 410 (11th Cir. 2009) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).[4] Although the court thus is required to

---

[4]    In this respect, federal procedural law governing summary judgment is similar to that of Alabama, whose substantive law governs the parties' dispute in this diversity action. *See* Ala. Code § 12-21-12(a) ("In all civil actions brought in any court of the State of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts."); *id.* ("Substantial evidence shall mean evidence of such quality and weight that reasonable and

closely examine the evidence introduced in favor and against the motion for summary judgment, the court must also guard against usurping the role of the jury as the ultimate finder of fact. *See Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.'").

## III.    STATEMENT OF FACTS

The pertinent facts of this premises liability action are largely undisputed. Taken in the light most favorable to Plaintiff, they are as follows.

On August 27, 2015, Plaintiff was a business invitee of Defendant's store. A little before 2:45 p.m., Plaintiff and her legal assistant, Amanda Wright, entered Defendant's store, located at 4560 West Main Street in Dothan, Alabama, to shop for office supplies. Shortly after entering the store, Plaintiff proceeded to the women's restroom. She did not recall seeing any of Defendant's employees at the restroom entrance, nor did she see any warning signs, cones, or construction tape. Upon entering the restroom, Plaintiff did not observe any water or other debris on the floor of the restroom. She proceeded to enter one of the restroom stalls, and seated herself on the toilet. She did not notice any water or debris within the confines of the individual stall, and she did not feel anything slippery or slick beneath her feet as she used the restroom.

fair-minded persons in the exercise of impartial judgment might reach different conclusions as to

After flushing the toilet, Plaintiff proceeded to stand up and pull up her slacks in one motion.  When she stood, Plaintiff fell backwards and to her left, towards the partition wall of an adjacent stall.  During her fall, she attempted to grab hold of a plastic trash can to mitigate her fall, but the can fell over because it was not very heavy, and did not contain much trash.  Although the trash can tipped over, little to no debris came out of the can onto the floor.  During her fall, Plaintiff hit her head on the partition wall, and fell on her bottom and back.

Subsequent to her fall, Plaintiff noted that her pants and shoes were getting wet. Plaintiff stated that she could see an area of wetness, which she described as a "puddle" "reflecting off the floor" extending out in front of the toilet and towards the partition wall.  She stated that she could not recall whether the water was clear or not, but that she did recall that there were no track marks or other markings in the water.

While on the floor of the restroom, Plaintiff used her cell phone to call Wright. Wright came to Plaintiff's assistance, and shimmied under the stall door to help Plaintiff. Like Plaintiff, Wright did not notice any liquid or debris on the floor of the restroom. She did not immediately notice any liquid on the floor of the restroom stall.  When she did discover that the hem of Plaintiff's slacks were wet, Wright for the first time noticed the water, which she described as a "puddle" of "standing water."  She did not find that the water was dirty, and she concluded that the water did not appear to contain tracks from anyone other than Plaintiff.

the existence of the fact sought to be proven.").

Janna Huggins, Defendant's Bakery Manager, arrived in the restroom shortly after Wright. Upon Wright's request, Huggins supplied Wright with a "handful" of paper towels to place over the water. After assisting Plaintiff, Huggins completed a Customer Incident Report on August 27, 2015, stating therein that Plaintiff "slipped on the floor possibly water."

Defendant maintains a policy, known as the "Don't Pass It Up, Pick It Up!" policy, which states that "all associates are responsible for keeping their store clean, clear of debris, and clear of spills." Along with the aforementioned general policy (which would impose the responsibility of performing a restroom inspection upon any employee entering the restroom), Defendant's written policies also dictate that the bathrooms must be cleaned and inspected three times a day. Accordingly, this written policy imposes scheduled inspections around the time of opening (approximately 7:00 a.m.), during mid-day (between 1:00 p.m. and 4:00 p.m.), and around closing (approximately 10:00 p.m.). During these inspections, employees are required to check for potential hazards, including liquid or debris that may be found on the floor of the restroom.

On the day of Plaintiff's fall, Shanequa Nettles, a member of Defendant's Customer Service Staff, performed a scheduled check of the restroom between 6:30 a.m. and 7:00 a.m. Nettles states that, during her inspection, she noticed no liquid on the floor of the restroom and confirms that no toilet was leaking at that time. Timothy Monk, a Front Service Clerk for Defendant, performed the mid-day inspection between

1:30 p.m. and 2:30 p.m. Monk states that, during his inspection, he noticed no liquid on the floor of the restroom and confirms that no toilet was leaking at that time. Although Defendant's employees are required to complete a "Customer Service Readiness Walkthrough" form at the time of opening, which would reflect that the first scheduled restroom inspection occurred, and a "Customer Service Daily Checklist," which would reflect that the mid-day restroom inspection occurred, Defendant did not retain those documents. Nonetheless, both employees affirm that they completed the forms for August 27, 2015.

Plaintiff's fall occurred at approximately 2:45 p.m. Defendant had no actual knowledge that water was present on the floor of the restroom at the time Plaintiff fell. Furthermore, at no time after Plaintiff's fall has Defendant been notified of any leaks or maintenance issues involving the toilet in the women's restroom.

During the discovery period in this case, Wright testified that it was her opinion that the water on which Plaintiff slipped came from the toilet. After reviewing a photo of the restroom scene, Wright opined that the toilet was leaking because it had a broken "seal" around its base. She based her conclusion upon a similar occurrence with her home's toilet. Vinson, a plumber who maintains an exclusive maintenance contract with the store in question, reviewed the photographs presented to Wright, and testified that the "seal" referred to by Wright is not a seal, but is caulking around the base of the toilet. Vinson states that the caulking has nothing to do with the wax seal that actually keeps the

water and waste material inside the toilet.

## IV.    DISCUSSION

Plaintiff's complaint alleges that "Defendant negligently and/or wantonly caused or allowed water to accumulate on the floor of the ladies' restroom . . . without providing warning or precaution to alert [ ] Plaintiff to the unsafe and hazardous condition of its premises."  Compl. (Doc. 1) at 2, ¶ 8.  "As a proximate consequence of Defendant's said negligence and/or wantonness, Plaintiff was caused to slip and fall and to be injured and damaged[.]"  *Id.*  Plaintiff alleges "Defendant was aware[,] or should have been aware[,] of the water that had accumulated on the floor of the ladies' restroom[,]" thus negligently and/or wantonly breaching its duty to keep its premises in a safe condition and/or free from danger.  *Id.* at 2, ¶¶ 9, 10.  Further, Plaintiff asserts that Defendant's negligent and/or wanton conduct was a proximate cause of her injuries and the damages she sustained.  *Id.* at 2, ¶ 10.

Defendant seeks summary judgment for Plaintiff's negligence claim, arguing that Plaintiff cannot "present sufficient evidence to maintain [such] a claim" against Defendant.  Doc. 35 at 14-27.  Specifically, Defendant argues that Plaintiff has failed to submit sufficient evidence demonstrating that (1) Defendant had actual notice of a hazard or dangerous condition, *id.* at 16; (2) constructive notice of a hazard or dangerous condition should be imputed upon Defendant, *id.* at 17-23; and (3) Defendant was delinquent in not discovering and removing the hazard or dangerous condition, *id.* at

23-27.  Defendant also asks the court to grant summary judgment in its favor as to Plaintiff's wantonness claim.  *Id*. at 28-30.

Plaintiff responds that Defendant is not entitled to summary judgment on the negligence claim because "[a]lthough actual or constructive notice to the defendant is ordinarily required in a slip and fall case before a plaintiff can recover damages, a plaintiff is not required to prove notice when the defendant created the hazard."  Doc. 40 at 8-9; 12-14.  Further, Plaintiff argues that "[i]t is a jury question as to whether or not [Defendant] was delinquent in not discovering and removing the water" from the bathroom floor.  *Id*. at 9-12.  Finally, as to the negligence claim, Plaintiff argues that Defendant's "open and obvious" defense is unavailing.  *Id*. at 16-17.  Plaintiff voluntarily stipulates to the dismissal of the wantonness claim against Defendant.  *Id*. at 17.

The undersigned will discuss the law governing this court's consideration of Defendant's motion and then examine the parties' arguments in support of their positions.

**A.    Plaintiff has not produced sufficient evidence to present to the jury her negligence claim.**

This court has had many occasions to apply Alabama's premises liability law in the context of a negligence claim arising out of a slip-and-fall occurring at a business. The court has previously observed as follows:

> Under Alabama law, a store is "under a duty to exercise reasonable care to provide and maintain reasonably safe premises" for the use of customers. *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). A store is not an insurer of a customer's safety and is liable only if it negligently fails to

keep the premises in a reasonably safe condition. *Id.*

*Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008). "For negligence to attach, the business must have 'had or should have had notice of the defect before the time of the accident.'" *Cook v. Wal-Mart Stores, Inc.*, 795 F. Supp. 2d 1269, 1273 (M.D. Ala. 2011) (quoting *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1164 (Ala. 1992)). "This is so because '[t]he entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries.'" *Id.* (quoting *Fowler v. CEC Entm't*, 921 So. 2d 428, 432–33 (Ala. Civ. App. 2005) (internal quotation omitted). The court has further explained how a customer may establish the defendant business's "superior knowledge" of a dangerous condition, like a spill, under Alabama law.

> Specifically, as this is a slip-and-fall case, [the plaintiff] may prove liability if she can establish one of three circumstances: (1) [the defendant] had actual notice that the puddle was on the floor; (2) the puddle had been on the floor for a sufficiently long period of time so that the store had constructive notice of the hazard; or (3) the store was otherwise delinquent for failing to discover and remove the puddle of water. *See Maddox*, 565 So. 2d at 15; *Cox v. Western Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935-36 (Ala. 1988).

*Williams*, 584 F. Supp. 2d at 1319. "However, if the plaintiff cannot prove notice in any of these ways, then 'that superior knowledge [of the business] is lacking . . . [and] the [business] cannot be held liable.'" *Cook*, 795 F. Supp. 2d at 1273 (quoting *Fowler*, 921 So. 2d at 432–33) (internal quotation omitted).

An exception exists to the requirement that a plaintiff prove constructive or actual

notice in order to impose liability upon a defendant "when the defendant *affirmatively* creates the condition." *Jackson v. Wal-Mart Stores, Inc.*, Civil Action No. 09-019-CG-N, 2010 WL 320491, at *4 (S.D. Ala. Jan. 20, 2010) (emphasis added). "In such a situation, the court shall presume notice." *Id.* (citing *Denmark v. Mercantile Stores, Inc.*, 844 So. 3d 1189, 1194 (Ala. 2002) (noting that customer who tripped over a roll of plastic shopping bags was not required to establish store's actual or constructive knowledge of the hazard because the store's employees created the hazard); *Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 864 (Ala. 2001) (customer who tripped over barbecue grill that was protruding from a box was not required to establish store's actual or constructive knowledge of the dangerous condition when the store's employees created the dangerous condition); *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 3d 232, 234 (Ala. 1993) (customer who jammed his foot on a gun cabinet protruding into the store aisle was not required to establish store's actual or constructive knowledge of the hazardous condition which was created by the store's employees)).

There is no dispute that Defendant lacked actual knowledge of the water on the floor of the women's restroom. Thus, in order to survive summary judgment, Plaintiff must point to substantial evidence showing that Defendant had constructive notice of the hazard (imputed from the length of time the hazard was on the floor), or that Defendant was delinquent in not discovering or removing the hazardous material. *See Williams*, 584 F. Supp. 2d at 1319. Plaintiff can also survive summary judgment if she shows that

Defendant affirmatively created the hazard.  *See Jackson*, 2010 WL 320491, at *4.  The undersigned turns to address each of these possibilities.

### i.    Constructive Notice

Under Alabama law, "[a] storekeeper is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it."  *Hale v. Kroger Ltd. Partnership I*, 28 So. 3d 772, 779 (Ala. Civ. App. 2009) (citing *S.H. Kress & Co. v. Thompson*, 103 So. 2d 171, 174 (1957)).  Importantly, "[d]irect evidence of the length of time the offending substance has remained on the floor is not required."  *Id.* (citing *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 875 (Ala. 1982)).  Rather, "a jury may infer the length of time from evidence that the substance is 'dirty, crumpled, or mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it.'"  *Williams*, 584 F. Supp. 2d at 1319 (quoting *Cash*, 418 So. 2d at 876).

Plaintiff does not know how long the water in which she fell had been on the restroom floor.  Indeed, she noticed no water or debris on the floor of the restroom anywhere when she entered the facility.  She did not notice water or debris on the floor of the restroom stall.  The first time she noticed the water was *after* she fell.  She did not notice that the water had track marks, and she could not recall whether it was dirty or clear.

Additionally, Wright provides no evidence that the water had been present for any amount of time prior to Plaintiff's fall. Like Plaintiff, Wright did not notice any water or debris on the floor of the restroom when she entered to assist Plaintiff. When shimmying under the restroom stall, Wright's clothing did not become wet, and she did not notice any water until she discovered that Plaintiff's pant hem was wet. Wright did not find the water to be dirty, but clear, and noted that the only track marks through the water were caused by Plaintiff's own feet.

Defendant's employee, Timothy Monk, inspected the restroom sometime between 1:30 p.m. and 2:30 p.m. Monk did not find any water on the floor of the restroom during his inspection, and the toilet was not leaking. No customers reported to Defendant that there was a problem with the toilet in the restroom either before or after Plaintiff's fall.

Nevertheless, Plaintiff argues that constructive notice should be inferred upon Defendant because Defendant cannot show definitively, due to its lack of document retention, that the restroom was inspected at all that day, or that such an inspection was performed properly. Doc. 40 at 15-16. Because Plaintiff contends that "there is no evidence that the mid-day inspection occurred prior to [Plaintiff's] fall . . . it is reasonable to infer that it had been hours prior to [Plaintiff's] accident that the women's bathroom floor had been inspected." *Id*. at 16. Accordingly, "[w]hether water had accumulated on the women's bathroom floor and whether it was there for a sufficient amount of time

to impute notice to [Defendant], or whether [Defendant] was delinquent in failing to discover its presence, are questions to be decided by a jury." *Id.*

The undersigned does not agree. Plaintiff provides no evidence, other than her assertion that Defendant cannot definitively prove that an inspection occurred prior to her fall, that the hazard was present. There is no evidence that another customer reported water in the restroom, or that the toilet was leaking before Plaintiff's fall. There is no evidence to indicate that water had been tracked through the women's restroom, which could suggest that water had been present for at least some time prior to Plaintiff's fall. There is no evidence that the water was dirty or contained track marks from feet belonging to anyone other than Plaintiff.

On the other hand, there is evidence that the trashcan Plaintiff grasped in order to lessen her fall contained little to no trash, as it was light to the touch, suggesting that an inspection and cleaning of the restroom had recently occurred. There is evidence that Sheniqua Nettles, a customer service staff member for Defendant, performed an inspection of the restroom on the day of Plaintiff's fall somewhere between 6:30 a.m. and 7:00 a.m. Nettles stated that during her morning inspection, she did not recall seeing water or any other liquid on the restroom floor, and that no water was leaking from the toilet or accumulating around the toilet at that time. There is evidence that Timothy Monk, a front service clerk for Defendant, performed his mid-day inspection of the women's restroom between 1:30 p.m. and 2:30 p.m. During that inspection, Monk did

not recall seeing any water or other liquid of any kind on the floor of the women's restroom. He confirmed that there was no water or other liquid leaking from the toilet, and that no liquid was accumulating around any of the toilets.

Notably, in order for Defendant to obtain summary judgment in its favor, it is sufficient for Defendant to *either* show that Plaintiff has not put forth substantial evidence to support an element of her claim *or* to show that Defendant has put forth evidence to negate an essential element of Plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322; *Danow*, 346 F. App'x at 410. At a minimum, Defendant has successfully challenged Plaintiff's lack of substantial evidence with regard to the length of time the water was present on the restroom floor. Indeed, Plaintiff has not provided substantial evidence supporting the conclusion that the water on which she slipped had been present on the floor for any amount of time, much less a significant amount of time required to impute constructive knowledge of the hazard upon Defendant. Plaintiff's mere speculation that Defendant did not perform a morning or mid-day inspection is simply not enough. Assuming arguendo that no inspection occurred, as Plaintiff asks the court to infer, it is still just as likely that the water did not happen upon the floor until the time Plaintiff flushed. Surely, an instantaneous creation of a hazard is not sufficient to satisfy the time requirement needed to impute constructive knowledge upon Defendant.

Therefore, because it is ultimately Plaintiff's burden to show that the offending substance was present for a sufficient time to impute constructive knowledge of the

substance to Defendant, and because Plaintiff has failed to meet that burden, the undersigned concludes that constructive notice should not be imputed upon Defendant. To hold otherwise would be contrary to Alabama law and would require the fact finder to engage in pure speculation in order to determine the length of time that the hazard remained on the women's restroom floor. As discussed above, this is not permitted under Alabama law. Accordingly, the undersigned concludes that the record before the court is lacking in the required "substantial" evidence tending to show how long the water remained on the floor of Defendant's restroom prior to Plaintiff's fall.[5] *See, e.g., Vargo v. Warehouse Groceries Mgmt., Inc.*, 529 So. 2d 986, 987 (Ala. 1988) (concluding, under Alabama's old "scintilla" standard, that the plaintiff offered insufficient evidence to survive summary judgment where she merely testified that the puddle of water in which she slipped, which was positioned in front of an ice machine, "looked like it had been there for a while"); *Cummings v. Target Stores, Inc.*, No. 2:12-cv-2798-JHH, 2014 WL 3889953, at *5-*6 (N.D. Ala. Aug. 5, 2014) (finding that the plaintiff offered insufficient length-of-time evidence where she testified that the puddle of water in which she slipped, which was positioned near a fountain drink vending machine, was a mix of water and melting ice). Accordingly, Defendant is entitled to summary judgment on any argument that Defendant had constructive notice of

---

[5] Instead, Plaintiff has offered, at most, only a "scintilla" of evidence in support of this essential element of proving her claim. As has been discussed previously, where a plaintiff offers only a "scintilla" of evidence in support of an essential element in support of her claim, summary judgment in favor of the defendant is appropriate.

the water on the restroom floor.

### ii.    Delinquent Inspection

Alabama law recognizes that, in the context of a hazardous substance or spill, a plaintiff may establish a defendant's superior knowledge of the hazard, thereby triggering the defendant's duty to remedy the hazard or provide adequate warning, by showing "that the defendant was delinquent in not discovering the foreign substance." *Hale*, 28 So. 3d at 779 (quoting *Winn-Dixie Store No. 1501 v. Brown*, 394 So. 2d 49, 50 (Ala. Civ. App. 1981)).  A plaintiff may satisfy this prong of the negligence test by showing that the defendant's "inspection procedure was inadequate or that it was performed inadequately on the day of his fall." *Id.* at 783.  *See also Knox*, 978 F. Supp. 2d at 1212. Importantly, "the mere presence of an offending substance does not automatically give rise to liability." *Hale*, 28 So. 3d at 783.  Instead, "[i]n order to prove that there was a *negligent inspection*, it is still incumbent upon [the plaintiff] to prove, or to offer evidence from which it can reasonably be said, that the foreign substance was on the floor at the time of the inspection." *Thompson*, 103 So. 2d at 175 (emphasis added). "[I]t remains that a customer asserting *delinquent inspection* on the part of a storekeeper must still prove that the foreign substance was on the floor for a sufficient period such that an adequate inspection would have discovered it." [6]  *Tucker v. Wal-Mart Stores,*

---

[6] Plaintiff does not appear to be arguing negligent inspection.  Nevertheless, to the extent that she is, she has offered no evidence that the toilet was leaking or that there was water on the floor at the time of Nettles's or Monk's inspection.  Because she is required to produce substantial evidence that the substance was on the floor at the time the inspection occurred, she cannot show Defendant's superior knowledge on that basis.

*Inc.*, 89 So. 3d 795, 801 (Ala. Civ. App. 2012) (emphasis added).

Plaintiff argues that it is a jury question as to whether Defendant was delinquent in not discovering and removing the water on the restroom floor. Plaintiff points the court to three cases supporting her argument: (1) *King v. Winn-Dixie of Montgomery, Inc.,* 565 So. 2d 12 (Ala. 1990), (2) *Cox v. Western Super Markets, Inc.*, 557 So. 2d 831 (Ala. 1989), and (3) *Ryles v. Wal-Mart Stores East, L.P.*, Civil Action No. 2:04cv334-T, 2004 WL 3711972 (M.D. Ala. Dec. 16, 2004).

In *King*, the plaintiff slipped and fell on some water that had accumulated on the defendant's floor past the store's front doormat. *King*, 565 So. 2d at 12. The *King* plaintiff testified that there was nothing unusual about the doormat, and the store manager testified that when he inspected the floor after the fall, he found water on it. *Id*. The store manager further testified that the store's policy was to mop the floors every thirty minutes on rainy days, like the one in question. *Id*. The store's assistant manager testified that it was store policy for the floors to be checked every thirty minutes when the weather is clear, and "as needed" during inclement weather. *Id*. The plaintiff alleged, in part, that the defendant was negligent in the maintenance of its floor. *Id*. After viewing the evidence in the light most favorable to the plaintiff, the Alabama Supreme Court could not say, as a matter of law, that the defendant was not "delinquent" in failing to discover the water and mop it up before the plaintiff fell. *Id*. at 13. Thus, the Court held that the plaintiff's negligence claim involved factual questions that should be

resolved by a jury, and reversed the trial court's summary judgment in favor of the defendant. *Id*.

In *Cox*, the plaintiff slipped and fell on a slippery spot as she was walking through the produce department in the defendant's store. *Cox*, 557 So. 2d at 831. Prior to her fall, the plaintiff testified that she observed the floor and that it appeared to be clear. *Id*. She also testified that after her fall, she saw nothing on the floor that could have caused her injury, but she felt a small wet spot on the right seat of her pants. *Id*. The undisputed facts indicated that, in the produce section, employees of the defendant would periodically transfer ice to the area and place it directly on the shelves. *Id*. Special mats were placed in the aisle to keep the area dry, and store employees were responsible for maintaining the area. *Id*. Applying the scintilla of evidence rule, the Alabama Supreme Court reversed the trial court's decision to grant summary judgment in favor of the defendant, noting that under such standard, the Court could not hold, "as a matter of law[,] that there was no foreign substance on the floor or that, if there was, the defendant was, as a matter of law, not delinquent in failing to discover and remove it." *Id*. at 832.

In *Ryles*, the plaintiff tripped over a box that was resting on the floor of defendant's store. *Ryles*, 2004 WL 3711972, at * 1. This court, relying upon *King*, determined that it could not conclude, "as a matter of law, that [the defendant] was not delinquent in failing to discover and remove a box from a shopping aisle, where it had remained for several minutes." *Id*. at *3. This court noted that "the precise time period

during which the box remained on the floor as well as the manner in which the box came to be on the floor [were] uncertain." *Id*. Thus, this court concluded that "whether the box's presence on the aisle floor for several minutes constituted delinquent behavior on [the defendant's] part raises material issues of fact which it would be inappropriate for the court to decide on summary judgment." *Id*.

Each of the cases cited by Plaintiff are distinguishable from this case. First, it is important to note that *Cox* was decided under the old "scintilla of evidence" rule. *Cox*, 557 So. 2d at 832. As previously noted, this case must be determined under the "substantial evidence" rule. *Danow*, 346 F. App'x at 410. Therefore, the undersigned does not find the holding of *Cox* persuasive as to whether Plaintiff has presented substantial evidence to withstand Defendant's motion for summary judgment. While the facts may be somewhat similar, the evidentiary burden is not.

Second, the *King* case involved the store's duty to maintain its premises *during a rainstorm*. *King*, 565 So. 2d at 14 (Houston, J., concurring) ("This case involves a storekeeper's duty in regard to rainwater at the entrance of a store."). In *Terrell v. Warehouse Groceries*, 364 So. 2d 675, 677 (Ala. 1978), the Alabama Supreme Court set forth the rainwater duty as follows:

> From an examination of these cases, it appears that although a storekeeper owes a customer a duty to exercise reasonable care to maintain the premises in a safe condition, where the foreign substance is rain water tracked in by customers and in the absence of unusual accumulations, due care does not require that a storekeeper keep the floor completely free of water. When it rains, surfaces naturally become more slippery than usual—a fact with which a customer is sufficiently familiar. To require a storekeeper to keep

a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings.

Evidence in *King* indicated that there was some "unusual accumulation" of rainwater at the end of the rubber mat from which the plaintiff slipped. *King*, 565 So. 2d at 12 ("After walking across a doormat at the front entrance, [the plaintiff] slipped and fell at a point where there was water on the floor. . . . She alleged that there was nothing unusual about the doormat."); *id*. at 14 (Houston, J. concurring) ("Because there was some evidence of an unusual accumulation of rainwater (Ms. King in her affidavit stated, 'I slipped and fell in a puddle of water on the floor . . . at the front entrance of the store'), there was a factual question as to whether [the defendant] should have taken more affirmative measures than it had taken before [the plaintiff] fell."). Thus, the Alabama Supreme Court concluded that summary judgment was inappropriate because factual questions remained as to the plaintiff's negligence claim, and that court could not say, as a matter of law, that the defendant was not delinquent in failing to discover and mop up the water.

Here, the facts are different, and so is the reasoning. In the rainwater cases, the Alabama Supreme Court has indicated that, absent evidence of unusual accumulations or other circumstances, the store-owner defendant would not be liable for a plaintiff's injury

resulting from a slip-and-fall. *See Terrell*, 364 So. 2d at 677. This is because, again, absent unusual accumulations or other circumstances, a store-owner is not required to keep the store floor completely water free in order to discharge his duty of due care. *Id*. Clearly, in order for water to accumulate, it must be there for at least some time. For such accumulation to be unusual, it must be there a significant amount of time in order to collect, or "other circumstances" must apply. One could reasonably infer that evidence of unusual accumulation indicates that sufficient time had passed so that an adequate inspection would have discovered it. That sufficient time could then trigger liability for the store owner due to his negligence in failing to remove that water or warn of its presence, or taking measures to prevent the accumulation. But, here, Plaintiff has offered no evidence that the water by the toilet existed for any amount of time prior to Plaintiff's fall. If the toilet did leak, it is entirely possible that the leak occurred—for the first time—when Plaintiff flushed. Plaintiff has not provided substantial evidence otherwise. Therefore, *King* is distinguishable because the nature of the facts themselves suggest that the water in that case had been on the ground for at least enough time to accumulate, thereby leaving questions for the jury as to whether that time was sufficient that an adequate inspection would have discovered the hazard and corrected it.

Finally, *Ryles* is distinguishable because that plaintiff provided testimony regarding how long the hazardous material was present before she tripped and fell. Indeed, in addressing whether the defendant had constructive notice of the hazard, this

court noted that the plaintiff had provided testimony that the box had been on the floor for at least five to ten minutes prior to her fall. 2004 WL 3711972, at *2 ("While it is conceivable that five to ten minutes might constitute constructive notice under some circumstances, five to ten minutes (which is the only time frame under which Ryles can testify, with any confidence, that the box was on the floor) is insufficient to constitute constructive notice in this case."). Subsequently, in addressing whether the defendant was delinquent in failing to discover and remove the box, the court relied upon *King,* and stated:

> Likewise, in this case, the court cannot conclude, as a matter of law, that [the defendant] was not delinquent in failing to discover and remove a box from a shopping aisle, *where it had remained for several minutes*. As discussed above, *the precise time period during which the box remained on the floor* as well as the manner in which the box came to be on the floor are uncertain. Yet whether the box's presence on the aisle floor *for several minutes* constituted delinquent behavior on [the defendant's] part raises material issues of fact which it would be inappropriate for the court to decide on summary judgment.

*Id*. at *3 (emphasis added). Importantly, in making its determination on delinquent inspection, this court referenced, *on three occasions*, the plaintiff's evidence, albeit somewhat minimal, that the box had been on the floor for at least several minutes (see emphasis provided above). Here, Plaintiff has not provided *any* evidence to indicate that the water on Defendant's floor was present for *any* amount of time *prior* to her fall. Accordingly, *Ryles* is distinguishable from this case.

It is this court's job to predict how the Alabama Supreme Court would apply

Alabama law to the case at hand. As previously noted, "a customer asserting delinquent inspection on the part of a storekeeper *must still prove that the foreign substance was on the floor for a sufficient period such that an adequate inspection would have discovered it.*" *Tucker,* 89 So. 3d at 801 (emphasis added). Here, because Plaintiff has offered no evidence to show that the water was on the bathroom floor for any time prior to her fall, the undersigned cannot conclude that Plaintiff has provided substantial evidence that the water was on the floor for a sufficient period of time that an adequate inspection by Defendant would have discovered it. It might indeed be a question for a jury to determine whether a defendant is liable under the theory of delinquent inspection if fifteen, thirty, or ninety minutes pass with a hazard on the floor. But, it clearly is not within the purview of the jury to speculate how long a hazard has been on the floor and then determine if such time constitutes negligence on the part of the defendant. The plaintiff must put forth some evidence to show that at least some time has passed since the hazard found its place on the floor in order for the jury to determine if the defendant should have remediated it. Because Plaintiff has not put forth such evidence, Plaintiff cannot establish Defendant's negligence via delinquent inspection, and Defendant is entitled to summary judgment on any such argument.

### iii. "Creation of the Hazard" Exception

When a defendant or its employees affirmatively create a dangerous condition, a plaintiff is not required to produce evidence of the defendant's actual or constructive

knowledge of the hazard. *See, e.g., Denmark v. Mercantile Stores,* Inc., 844 So. 3d 1189, 1194 (Ala. 2002) (noting that customer who tripped over a roll of plastic shopping bags was not required to establish store's actual or constructive knowledge of the hazard because the store's employees created the hazard); *Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 864 (Ala. 2001) (customer who tripped over barbecue grill that was protruding from a box was not required to establish store's actual or constructive knowledge of the dangerous condition when the store's employees created the dangerous condition); *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 3d 232, 234 (Ala. 1993) (customer who jammed his foot on a gun cabinet protruding into the store aisle was not required to establish store's actual or constructive knowledge of the hazardous condition which was created by the store's employees). Plaintiff argues that "[i]n the case at bar, it is reasonable to infer that the water at the toilet where [Plaintiff] fell was 'standing water' that came from the bottom of the toilet where a seal was broken." Doc. 40 at 30. Thus, Plaintiff attempts to reason, that the "creation of the hazard" exception should apply in this case because Defendant or its employees "have affirmatively created the dangerous condition (broken seal on the toilet)[.]" *Id.*

Plaintiff offers no evidence that Defendant has affirmatively created the hazard—*i.e.,* that one of Defendant's employees broke the seal on the toilet. Although Plaintiff attempts to support her position through the testimony of Wright, who opines that the water on the floor came from the bottom of the toilet due to a broken "seal," such

testimony is insufficient to show that an employee of Defendant broke the seal. Assuming *arguendo* that the seal was indeed broken, and that such a seal could be affirmatively damaged by an individual, it is just as likely that the damage occurred from a customer and not an employee. In addition, Plaintiff has produced no evidence to indicate that Defendant affirmatively chose a toilet with a broken seal and placed such defective item in its store. Nor has Plaintiff shown that Defendant insufficiently maintained the toilet or allowed a defective toilet to remain on its premises, knowing the same was defective. *See Kmart Corp. v. Peak*, 757 So. 2d 1138 (Ala. 1999) (noting the general rule that "in an action for injury, allegedly caused by the defendant's negligent keeping or maintaining a dangerous place or instrumentality, evidence of notice to the defendant, prior to the accident in suit, of the alleged dangerousness or defectiveness is material or consequential in a negligence action."). And, further, Defendant has put forth evidence that it received no complaints regarding a leaky toilet in the restroom before or after Plaintiff's fall. Therefore, because Plaintiff has not offered substantial evidence to show that Defendant affirmatively created the hazard, or even allowed such a hazard to remain, the "creation of the hazard" exception does not apply.

### iv. Open and Obvious Defense

Alabama courts employ an objective standard when determining whether a safety hazard is open and obvious. *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 741-42 (Ala. 2009) (citation omitted). Thus, when a defendant challenges a plaintiff's fall under the

"open and obvious" argument, the court is concerned with whether the hazard "should have been observed, not whether in fact it was consciously appreciated[.]" *Id.* (internal quotation and citation omitted). In other words, a premises owner has no duty to warn its invitees about open and obvious safety hazards of which the invitees are aware, or should be aware, through the exercise of reasonable care. *Id.* at 742 (internal quotation and citation omitted).

Plaintiff asserts that Defendant's argument regarding Plaintiff's failure to exercise reasonable care is unavailing. Doc. 40 at 17. In response, Defendant states that "[t]hough it disagrees with Plaintiff's contentions relating to the 'open and obvious' nature of the hazard described by [Plaintiff] and Wright and the applicability of its affirmative defense, [Defendant] also notes for the Court that it has made no such argument in its Brief in Support of Motion for Summary Judgment." Doc. 43 at 32. Thus, Defendant concludes, "[i]t is unclear why the Plaintiff felt compelled to address this argument; regardless, there is no need for [Defendant] to respond any further at this time." *Id.*

Because Defendant, by its own admission, is not moving for summary judgment based upon the argument that the hazard was open and obvious to Plaintiff, the undersigned concludes that such an argument is not at issue before the court. Therefore, no recommendation on the matter is needed.

## V.   CONCLUSION

In conclusion, it is

ORDERED that Defendant's Motion to Strike (Doc. 42) is DENIED.   It is further

ORDERED that Plaintiff's Motion to Strike (Doc. 46) is DENIED.   Additionally, for all of the reasons stated herein, the undersigned Magistrate Judge hereby

RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 34) be GRANTED.   It is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **May 17, 2017**.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive, or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as

binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 3rd day of May, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE